**Heidi L. Mandt, OSB #953459**
**hmandt@williamskastner.com**
WILLIAMS, KASTNER & GIBBS PLLC
1515 SW Fifth Avenue, Suite 600
Portland, OR 97201-5449
Phone: (503) 228-7967
Fax: (503) 222-7261
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **GOVERNMENT EMPLOYEES INSURANCE COMPANY, GEICO INDEMNITY COMPANY, GEICO GENERAL INSURANCE COMPANY, GEICO CASUALTY COMPANY, and GEICO SECURE INSURANCE COMPANY,**<br><br>Plaintiffs,<br><br>v.<br><br>**KENNY JUNG, L.Ac., SUNNY JUNG, N.D., ACCIDENT PAIN WELLNESS CLINIC, INC., and JANE DOE DEFENDANTS 1-2,**<br><br>Defendant. | **Case No. 3:22-cv-01091**<br><br>**COMPLAINT**<br><br>JURY DEMAND REQUESTED |

Plaintiffs Government Employees Insurance Co., GEICO Indemnity Co., GEICO General

Insurance Company, GEICO Casualty Co., and GEICO Secure Insurance Company (collectively

"GEICO" or "Plaintiffs"), as and for their Complaint against the Defendants, hereby allege as

Page 1 -    COMPLAINT

follows:

## **INTRODUCTION**

1.      This action seeks to recover more than $300,000.00 that the Defendants wrongfully have obtained from GEICO by submitting, and causing to be submitted thousands of unlawful personal injury protection ("PIP") insurance charges through Accident Pain Wellness Clinic, Inc. ("Accident Pain Wellness") for purported initial examinations, acupuncture services, osteopathic manipulation services, and therapeutic services (collectively referred to hereinafter as the "Unlawful Services").

2.      The Unlawful Services purportedly were provided to individuals ("Insureds") who claimed to have been involved in automobile accidents and were eligible for insurance coverage under GEICO automobile insurance policies.

3.      In addition, GEICO seeks a declaration that GEICO is not legally obligated to pay pending claims submitted or caused to be submitted by the Defendants through Accident Pain Wellness because:

(i)     the Unlawful Services were not medically necessary, and were provided pursuant to pre-determined protocols designed to financially enrich the Defendants, rather than to treat or otherwise benefit the Insureds who were subjected to them;

(ii)    in many cases, the Unlawful Services were never legitimately provided in the first instance;

(iii)   the billing codes used for the Unlawful Services misrepresented and exaggerated the level of services that were provided in order to inflate the charges submitted to GEICO; and

(iv)    in many cases, the Unlawful Services were performed – the extent they were performed at all – by individuals lacking the requisite licensure to perform those services.

**Williams Kastner**
1515 SW Fifth Avenue, Suite 600
Portland, OR 97201-5449
(503) 228-7967

7627471.1

4.    The Defendants fall into the following categories:

(i)    Defendant Kenny Jung, L.Ac. ("K. Jung") is an acupuncturist licensed to practice acupuncture in Oregon, owned and controlled Accident Pain Wellness, and performed many of the Unlawful Services.

(ii)    Defendant Sunny Jung, N.D. ("S. Jung") is a doctor of naturopathic medicine licensed to practice naturopathic medicine in Oregon, owned and controlled Accident Pain Wellness, and performed many of the Unlawful Services.

(iii)    Defendant Accident Pain Wellness is an Oregon corporation through which the Unlawful Services purportedly were provided and were billed to automobile insurance companies, including GEICO.

(iv)    Jane Doe Defendants "1" and "2" are unlicensed individuals, presently not identifiable, who furthered the unlawful scheme perpetrated against GEICO, by, among other things, performing many of the Unlawful Services to Insureds without the requisite licenses to do so.

5.    As discussed below, the Defendants, at all relevant times, have known that:

(i)    the Unlawful Services were not medically necessary, and were provided pursuant to pre-determined protocols designed to financially enrich the Defendants, rather than to treat or otherwise benefit the Insureds who were subjected to them;

(ii)    in many cases, the Unlawful Services were never provided in the first instance;

(iii)    the billing codes used for the Unlawful Services misrepresented and exaggerated the level of services that were provided in order to inflate the charges submitted to GEICO; and

(iv)    in many cases, the Unlawful Services were performed – the extent they were performed at all – by individuals lacking the requisite licensure to perform those services.

6.    As such, the Defendants do not have – and never had – any right to be compensated for the Unlawful Services that they billed or caused to be billed to GEICO. The chart annexed hereto as Exhibit "1" sets forth a large representative sample of the claims that

Page 3 -    COMPLAINT

have been identified to date that the Defendants submitted, or caused to be submitted, to GEICO for the Unlawful Services via the United States mail.

7.    The Defendants' scheme began as early as 2014 and has continued uninterrupted since that time. As a result of the Defendants' scheme, GEICO has incurred damages of more than $300,000.00.

## THE PARTIES

### I.    Plaintiffs

8.    Plaintiffs Government Employees Insurance Co., GEICO Indemnity Co., GEICO General Insurance Company, GEICO Casualty Co., and GEICO Secure Insurance Company are Nebraska corporations with their principal places of business in Chevy Chase, Maryland. GEICO is authorized to conduct business and to issue automobile insurance policies in Oregon.

### II.    Defendants

9.    Defendant K. Jung resides in and is a citizen of Oregon. K. Jung was licensed to practice acupuncture in Oregon on April 12, 2010, is the president and an owner of Accident Pain Wellness, and performed many of the Unlawful Services.

10.    Defendant S. Jung resides in and is a citizen of Oregon. S. Jung was licensed to practice naturopathic medicine in Oregon on October 12, 2016, is the secretary and an owner of Accident Pain Wellness, and performed many of the Unlawful Services.

11.    Defendant Accident Pain Wellness is an Oregon corporation with its principal place of business in Oregon. Accident Pain Wellness was incorporated in Oregon on or about March 3, 2014 and was used by the Defendants as a vehicle to submit unlawful billing to GEICO and other insurers.

Page 4 -    COMPLAINT

12.     Between March 3, 2014 and February 27, 2017, K. Jung served as the only officer and owner of Accident Pain Wellness. On or about February 27, 2017, S. Jung became secretary and co-owner, with K. Jung, of Accident Pain Wellness.

13.     Upon information and belief, Jane Doe Defendants 1-2 reside in and are citizens of Oregon. Jane Doe Defendants "1" and "2" are unlicensed individuals, presently not identifiable, who furthered the unlawful scheme perpetrated against GEICO, by, among other things, performing, in part or in whole and in exchange for compensation, Unlawful Services to Insureds without the requisite licenses to do so.

## JURISDICTION AND VENUE

14.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1332(a)(1) because the total matter in controversy, exclusive of interest and costs, exceeds the jurisdictional threshold of $75,000.00, and is between citizens of different states.

15.     This Court also has original jurisdiction pursuant to 28 U.S.C. § 1331 over claims brought under 18 U.S.C. §§ 1961 et seq. (the Racketeer Influenced and Corrupt Organizations ("RICO") Act).

16.     In addition, this Court has supplemental jurisdiction over the subject matter of the claims asserted in this action pursuant to 28 U.S.C. § 1367.

17.     Venue in this District is appropriate pursuant to 28 U.S.C. § 1391, as the District of Oregon is the District where one or more of the Defendants reside and because this is the District where a substantial amount of the activities forming the basis of the Complaint occurred.

/ / /

/ / /

Page 5 -    COMPLAINT

**Williams Kastner**
1515 SW Fifth Avenue, Suite 600
Portland, OR 97201-5449
(503) 228-7967

7627471.1

**ALLEGATIONS**

I.      **An Overview of the Pertinent Law Governing No-Fault Insurance Reimbursement**

      A.      **Oregon's PIP Law**

18.      Oregon has a comprehensive statutory system designed to ensure that motor vehicle accident victims are compensated for their injuries. The statutory system is embodied within the Oregon Personal Injury Benefits Law (the "PIP Law", ORS §§ 742.518-548), which requires automobile insurers to provide Personal Injury Protection Benefits ("PIP Benefits") to Insureds.

19.      An Insured can assign his or her right to PIP Benefits to healthcare services providers in exchange for those services. Pursuant to a duly executed assignment, a healthcare services provider may submit claims directly to an insurance company in order to receive payment for medically necessary services.

      B.      **No-Fault Reimbursement, Medical Necessity, Misrepresentation, and the Oregon PIP Law**

20.      PIP Benefits required by the PIP Law consist, in relevant part, of the payment of "all reasonable and necessary expenses of medical, hospital, dental, surgical, ambulance, and prosthetic services incurred within two years after the date of the person's injury, but not more than $15,000 in the aggregate for all such expenses of the person." ORS § 742.524(1)(a).

21.      Oregon law allows for an insurer to exclude from coverage for personal injury protection benefits of any injured person who "willfully conceals or misrepresents any material fact in connection with a claim for personal injury benefits." ORS § 742.530(1)(c).

**Williams Kastner**
1515 SW Fifth Avenue, Suite 600
Portland, OR 97201-5449
(503) 228-7967

7627471.1

22.     Similarly, ORS § 746.100 prohibits a person from making "false or fraudulent statement[s] or representation[s] on or relative to an application for insurance, or for the purpose of obtaining a fee, commission, money, or benefit from an insurer or insurance provider."

### C.    Pertinent Oregon Law Regarding Medical Billing and Payment

23.     Oregon law sets forth a series of prerequisites and requirements for medical billing for and payment of PIP Benefits.

24.     Under the PIP Law, healthcare services providers are prohibited from billing for services in amounts in excess of the lesser of: (i) the amount the provider charges the general public; or (ii) the amount set forth in the fee schedules for medical services published pursuant to Oregon's worker's compensation statutes (the "Fee Schedule"). See ORS § 742.525.

25.     Moreover, the Oregon Director of the Department of Consumer and Business Services has promulgated a series of rules governing medical billing pursuant to the Fee Schedule.

26.     In particular, Oregon law permits reimbursement for healthcare billing only for "treatment that falls within the scope and field of the medical provider's license to practice…." See OAR § 436-009-0010(1)(a).

27.     What is more, OAR § 436-009-0010(1)(d) prohibits medical providers from submitting "false or fraudulent billings, including billing for services not provided." "False or fraudulent" is defined as "an intentional deception or misrepresentation with the knowledge that the deception could result in unauthorized benefit to the provider or some other person." Id.

28.     Medical providers must submit bills on a completed current Centers for Medicare & Medicaid Services ("CMS") 1450 or CMS 1500 form. See OAR § 436-009-0010(3)(b).

**Williams Kastner**
1515 SW Fifth Avenue, Suite 600
Portland, OR 97201-5449
(503) 228-7967

7627471.1

29.     Subject to limited exceptions not relevant here, medical providers are required to complete their CMS 1450 or 1500 forms in accordance with the instructions provided in the National Uniform Claim Committee 1500 Claim Form Reference Instruction Manual. See OAR § 436-009-0010(3)(c).

30.     When billing for medical services, a medical provider must use current procedural terminology ("CPT") promulgated by the American Medical Association.

31.     The Fee Schedule adopts, by reference, the American Medical Association's CPT Assistant ("CPT Assistant") and the alphanumeric codes from the Centers for Medicare & Medicaid Services ("CMS") Healthcare Common Procedure Coding System (HCPCS).

32.     If there is no specific code for the medical service, the medical provider must use the "unlisted" code and provide a description of the service provided.

33.     Moreover, Oregon law requires that medical provider billings must be accompanied by legible chart notes that, among other things, must document the services that have been billed and identify the person performing the service. See OAR § 436-009-0010(7)(a-b).

**D.     Pertinent Oregon Law Governing the Practice of Acupuncture**

34.     Oregon law defines acupuncture as an "Oriental health care practice used to promote health and to treat neurological, organic, or function disorders by the stimulation of specific points on the surface of the body by the insertion of needles", which includes "the treatment method of moxibustion, as well as the use of electrical, thermal, mechanical, or magnetic devices, with or without needles, to stimulate acupuncture points and acupuncture meridians to induce acupuncture anesthesia or analgesia." See O.A.R. 847-070-0005(1)(a).

Page 8 -    COMPLAINT

**Williams Kastner**
1515 SW Fifth Avenue, Suite 600
Portland, OR 97201-5449
(503) 228-7967

7627471.1

35.     In addition, the practice of acupuncture is defined to include "Oriental massage, exercise, and related therapeutic methods". See O.A.R. 847-070-0005(1)(b)(B).

36.     In Oregon, only individuals licensed by the Oregon Medical Board to practice acupuncture, along with licensed physicians, are permitted to administer acupuncture treatment to any other individual. See O.A.R. 847-070-0020(1).

## II.     The Defendants' Unlawful Treatment and Billing Protocol

37.     Beginning in 2014, the Defendants carried out a scheme whereby they billed GEICO hundreds of thousands of dollars for medically unnecessary and illusory services.

38.     In the claims identified in Exhibit "1", the vast majority of the Insureds whom the Defendants purported to treat did not suffer from any significant injuries or health problems at all as a result of the accidents they experienced or purported to experience.

39.     Even so, the Defendants purported to subject many Insureds to a medically unnecessary course of "treatment" that was provided pursuant to a pre-determined protocol designed to maximize the billing that the Defendants could submit or cause to be submitted to insurers, including GEICO, rather than to treat or otherwise benefit the Insureds who purportedly were subjected to it.

40.     The Defendants provided their pre-determined treatment protocol to Insureds without regard for the Insureds' individual symptoms or presentment, or – in most cases – the total absence of any serious medical problems arising from any actual automobile accidents.

41.     The Defendants permitted the unlawful treatment and billing protocol described below to proceed under their auspices because the Defendants sought to profit from the unlawful billing submitted to GEICO and other insurers.

**Williams Kastner**
1515 SW Fifth Avenue, Suite 600
Portland, OR 97201-5449
(503) 228-7967

**A.      The Unlawful Charges for Initial Examinations at Accident Pain Wellness**

42.      As an initial step in their unlawful treatment and billing protocol, Accident Pain Wellness, K. Jung, and S. Jung provided virtually every insured in the claims identified in Exhibit "1" with an initial examination.

43.      As set forth in Exhibit "1", K. Jung and S. Jung performed the majority of the initial examinations at Accident Pain Wellness, which were then primarily billed to GEICO under CPT code 99203.

44.      In the claims for initial examinations identified in Exhibit "1", the charges for the initial examinations were unlawful in that they misrepresented the nature and extent of the examinations, as well as whether the examinations were ever legitimately provided in the first instance.

**1.      Misrepresentations Regarding the Severity of the Insureds' Presenting Problems**

45.      In the claims for initial examinations under CPT code 99203 identified in Exhibit "1", Accident Pain Wellness, K. Jung, and S. Jung routinely misrepresented the severity of the Insureds' presenting problems.

46.      Pursuant to the American Medical Association's CPT Assistant, the use of CPT code 99203 to bill for an initial patient examination typically requires that the Insured present with problems of moderate severity.

47.      The CPT Assistant also provides various clinical examples of the types of presenting problems that qualify as moderately severe, and thereby justify the use of CPT codes 99203 to bill for an initial patient examination.

Williams Kastner
1515 SW Fifth Avenue, Suite 600
Portland, OR 97201-5449
(503) 228-7967

48.     For example, the CPT Assistant provides the following clinical examples of presenting problems that might support the use of CPT code 99203 to bill for an initial patient examination:

(i)     Office visit for initial evaluation of a 48-year-old man with recurrent low back pain radiating to the leg. (General Surgery)

(ii)    Initial office evaluation of 49-year-old male with nasal obstruction. Detailed exam with topical anesthesia. (Plastic Surgery)

(iii)   Initial office evaluation for diagnosis and management of painless gross hematuria in new patient, without cystoscopy. (Internal Medicine)

(iv)    Initial office visit for evaluation of 13-year-old female with progressive scoliosis. (Physical Medicine and Rehabilitation)

(v)     Initial office visit with couple for counseling concerning voluntary vasectomy for sterility. Spent 30 minutes discussing procedure, risks and benefits, and answering questions. (Urology)

49.     Thus, pursuant to the CPT Assistant, the moderately severe presenting problems that could support the use of CPT code 99203 to bill for an initial patient examination typically are either chronic and relatively serious problems, acute problems requiring immediate invasive treatment, or issues that legitimately require physician counseling.

50.     By contrast, to the extent that the Insureds in the claims identified in Exhibit "1" had any presenting problems at all as the result of their automobile accidents, the problems virtually always of low or minimal severity.

51.     In keeping with the fact that the Insureds in the claims identified in Exhibit "1" presented with problems of low or minimal severity, to the limited extent that the Insureds did report to a hospital after their accidents, they virtually always were briefly observed on an outpatient basis and then sent on their way after a few hours with, at most, a minor sprain or

**Williams Kastner**
1515 SW Fifth Avenue, Suite 600
Portland, OR 97201-5449
(503) 228-7967

strain diagnosis and/or similar soft-tissue injuries.

52.    Even so, in the claims for initial examinations identified in Exhibit "1", Accident

Pain Wellness, K. Jung, and S. Jung routinely billed for their initial examinations using CPT code

99203, and thereby falsely represented that the Insureds presented with problems of moderate

severity.

53.    For example:

(i)    On February 7, 2015, an Insured named AW was involved in an automobile accident. In keeping with the fact that AW was not seriously injured, AW did not visit any hospital emergency room following the accident. To the extent that AW experienced any health problems at all as a result of the accident, they were of low or minimal severity. Even so, following a purported initial examination of AW on March 26, 2015, K. Jung and Accident Pain Wellness billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that the initial examination involved presenting problems of moderate severity.

(ii)    On November 18, 2015, an Insured named WJ was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, that the damage to WJ's vehicle was minor, and that WJ's vehicle was drivable following the accident. The police report further indicated that WJ was transported by ambulance to Providence St. Vincent Medical Center. The contemporaneous hospital records indicated that WJ was briefly observed on an outpatient basis, and was discharged the same day with a minor cervical strain and chest contusion diagnosis. To the extent that WJ experienced any health problems at all as a result of the accident, they were of low or minimal severity. Even so, following a purported initial examination of WJ on November 19, 2015, K. Jung and Accident Pain Wellness billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that the initial examination involved presenting problems of moderate severity.

(iii)    On May 20, 2016, an Insured named YK was involved in an automobile accident. In keeping with the fact that YK was not seriously injured, YK did not visit any hospital emergency room following the accident. To the extent that YK experienced any health problems at all as a result of the accident, they were of low or minimal severity. Even so, following a purported initial examination of YK on May 23, 2016, K. Jung and Accident Pain Wellness billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that the initial examination involved presenting problems of moderate severity.

**Williams Kastner**
1515 SW Fifth Avenue, Suite 600
Portland, OR 97201-5449
(503) 228-7967

    (iv)    On March 30, 2018, an Insured named HH was involved in an automobile accident. In keeping with the fact that HH was not seriously injured, HH did not visit any hospital emergency room following the accident. To the extent that HH experienced any health problems at all as a result of the accident, they were of low or minimal severity. Even so, following a purported initial examination of HH on March 30, 2018, K. Jung, S. Jung, and Accident Pain Wellness billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that the initial examination involved presenting problems of moderate severity.

    (v)    On April 10, 2019, an Insured named MS was involved in an automobile accident. In keeping with the fact that MS was not seriously injured, MS did not visit any hospital emergency room following the accident. To the extent that MS experienced any health problems at all as a result of the accident, they were of low or minimal severity. Even so, following a purported initial examination of MS on May 20, 2019, K. Jung, S. Jung, and Accident Pain Wellness billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that the initial examination involved presenting problems of moderate severity.

54.    These are only representative examples. In virtually all of the claims for initial examinations identified in Exhibit "1", Accident Pain Wellness, K. Jung, and S. Jung falsely represented that Insureds presented with problems of moderate severity, when in fact that Insureds' problems were low or minimal severity soft tissue injuries such as sprains and strains, to the extent that they had any presenting problems at all at the time of the examinations.

55.    In the claims for initial examinations identified in Exhibit "1", Accident Pain Wellness, K. Jung, and S. Jung routinely falsely represented that the Insureds presented with problems of moderate or moderate severity in order to create a false basis for their charges for the examinations under CPT code 99203, because examinations billable under CPT code 99203 are reimbursable at a higher rate than examinations involving presenting problems of low, minimal, or no severity.

56.    In the claims for initial examinations identified in Exhibit "1", Accident Pain Wellness, K. Jung, and S. Jung also routinely falsely represented that the Insureds presented with

Page 13 -  COMPLAINT

problems of moderate severity in order to create a false basis for the other Unlawful Services that the Defendants provided to the Insureds.

### 2.      Misrepresentations Regarding the Amount of Time Spent on the Purported Examinations

57.      Moreover, the use of CPT code 99203 to bill for an initial examination represents that the physician, naturopath, or acupuncturist who performed the examination spent at least 30 minutes of face-to-face time with the patient or the patient's family.

58.      As set forth in Exhibit "1", Accident Pain Wellness, K. Jung, and S. Jung submitted many of their bills for initial examinations under CPT code 99203, and thereby represented that they performed the initial examinations and purported to spend 30 minutes of face-to-face time with the Insureds or the Insureds' families during the examinations.

59.      In fact, in the claims for initial examinations identified in Exhibit "1", neither K. Jung, S. Jung, or any other physician, acupuncturist, or naturopath associated with Accident Pain Wellness ever spent 30 minutes of face-to-face time with the Insureds or their families when conducting the examinations and consultations.

60.      Rather, in the claims for initial examinations identified in Exhibit "1", the initial examinations did not entail more than 15 minutes of face-to-face time between the examining physician, acupuncturist, or naturopath, and the Insureds or their families, to the extent that the examinations actually were performed in the first instance.

61.      For instance, and in keeping with the fact that the initial examinations allegedly provided by K. Jung, S. Jung, and Accident Pain Wellness did not entail more than 15 minutes of face-to-face time with the insureds or their families, K. Jung and S. Jung used template forms

**Williams Kastner**
1515 SW Fifth Avenue, Suite 600
Portland, OR 97201-5449
(503) 228-7967

in purporting to conduct the initial examinations.

62.     The template forms that K. Jung and S. Jung used to document the examinations set forth a very limited range of potential patient complaints, examination/diagnostic testing options, potential diagnoses, and treatment recommendations.

63.     All that was required to complete the template forms was a brief patient interview and a brief physical examination of the Insureds' musculoskeletal system, consisting, at most, of a check of some of the Insureds' vital signs, basic range of motion and muscle strength testing, and other basic forms of testing.

64.     These interviews and examinations did not require any acupuncturist, naturopath, or any other healthcare provider associated with Associated Pain & Wellness to spend more than 15 minutes of face-to-face time with the Insureds during the initial examinations.

65.     In the claims for initial examinations identified in Exhibit "1", Accident Pain Wellness falsely represented that the examinations and consultations involved 30 minutes of face-to-face time with the Insureds or their families in order to create a false basis for their charges under CPT code 99203 because examinations and consultations billable under CPT code 99203 is reimbursable at a higher rate than examinations and consultations that require less time to perform.

### 3.     Misrepresentations Regarding "Detailed" Examinations

66.     Moreover, in the claims identified in Exhibit "1" for examinations under CPT code 99203, Accident Pain Wellness, K. Jung, and S. Jung falsely represented the extent of the underlying physical examinations.

**Williams Kastner**
1515 SW Fifth Avenue, Suite 600
Portland, OR 97201-5449
(503) 228-7967

7627471.1

67.     Pursuant to the CPT Assistant, the use of CPT code 99203 to bill for a patient examination represents that the naturopath or acupuncturist who performed the examination conducted a "detailed" physical examination.

68.     As set forth in Exhibit "1", Accident Pain Wellness, K. Jung, and S. Jung virtually always billed for the initial examinations using CPT code 99203, and thereby represented that K. Jung and S. Jung conducted detailed physical examinations of the Insureds who purportedly received the examinations.

69.     Pursuant to the CPT Assistant, a "detailed" physical examination requires – among other things – that the acupuncturist or naturopath conduct an extended examination of the affected body areas and other symptomatic or related organ systems.

70.     Pursuant to the CPT Assistant, in the context of patient examinations, an acupuncturist or naturopath has not conducted an extended examination of a patient's musculoskeletal organ system unless the acupuncturist or naturopath has documented findings with respect to the following:

(i)     measurement of any three of the following seven vital signs: (a) sitting or standing blood pressure; (b) supine blood pressure; (c) pulse rate and regularity; (d) respiration; (e) temperature; (f) height; (g) weight;

(ii)    general appearance of patient (e.g., development, nutrition, body habitus, deformities, attention to grooming);

(iii)   examination of peripheral vascular system by observation (e.g., swelling, varicosities) and palpation (e.g., pulses, temperature, edema, tenderness);

(iv)    palpation of lymph nodes in neck, axillae, groin and/or other location;

(v)     brief assessment of mental status;

(vi)    examination of gait and station;

**Williams Kastner**
1515 SW Fifth Avenue, Suite 600
Portland, OR 97201-5449
(503) 228-7967

(vii)    inspection and/or palpation of skin and subcutaneous tissue (e.g., scars, rashes, lesions, café au-lait spots, ulcers) in four of the following six areas: (a) head and neck; (b) trunk; (c) right upper extremity; (d) left upper extremity; (e) right lower extremity; and (f) left lower extremity;

(viii)   coordination;

(ix)     examination of deep tendon reflexes and/or nerve stretch test with notation of pathological reflexes; and

(x)      examination of sensation.

71.    In the claims for initial examinations identified in Exhibit "1", when Accident Pain Wellness, K. Jung, and S. Jung billed for the initial examinations under CPT code 99203, they falsely represented that K. Jung performed "detailed" patient examinations on the Insureds he purported to treat during the initial examinations.

72.    In fact, with respect to the claims for initial examinations under CPT code 99203 that are identified in Exhibit "1", neither K. Jung nor any other acupuncturist associated with Accident Pain Wellness ever conducted an extended examination of the Insureds' musculoskeletal systems.

73.    For instance, in each of the claims under CPT code 99203 identified in Exhibit "1", neither K. Jung nor any other acupuncturist associated with Accident Pain Wellness ever conducted an extended examination of the Insureds' musculoskeletal systems, inasmuch as they did not document findings with respect to the following:

(i)      measurement of any three of the following seven vital signs: (a) sitting or standing blood pressure; (b) supine blood pressure; (c) pulse rate and regularity; (d) respiration; (e) temperature; (f) height; (g) weight;

(ii)     general appearance of patient (e.g., development, nutrition, body habitus, deformities, attention to grooming);

(iii)    examination of peripheral vascular system by observation (e.g., swelling,

Page 17 -  COMPLAINT

**Williams Kastner**
1515 SW Fifth Avenue, Suite 600
Portland, OR 97201-5449
(503) 228-7967

varicosities) and palpation (e.g., pulses, temperature, edema, tenderness);

(iv)    palpation of lymph nodes in neck, axillae, groin and/or other location;

(v)    brief assessment of mental status;

(vi)    examination of gait and station;

(vii)    inspection and/or palpation of skin and subcutaneous tissue (e.g., scars, rashes, lesions, café au-lait spots, ulcers) in four of the following six areas: (a) head and neck; (b) trunk; (c) right upper extremity; (d) left upper extremity; (e) right lower extremity; and (f) left lower extremity;

(viii)    coordination;

(ix)    examination of deep tendon reflexes and/or nerve stretch test with notation of pathological reflexes; and/or

(x)    examination of sensation.

74.    For example:

(i)    On April 3, 2014, K. Jung and Accident Pain Wellness billed GEICO under CPT code 99203 for an initial examination that K. Jung performed on an Insured named SC, and thereby represented that they had provided a "detailed" physical examination to SC. However, K. Jung did not document an extended examination of SC's musculoskeletal system, despite the fact that – to the extent that SC had any complaints at all as the result of the automobile accident – they were limited to musculoskeletal complaints.

(ii)    On December 1, 2015, K. Jung and Accident Pain Wellness billed GEICO under CPT code 99203 for an initial examination that K. Jung performed on an Insured named HK, and thereby represented that they had provided a "detailed" physical examination to HK. However, K. Jung did not document an extended examination of HK's musculoskeletal system, despite the fact that – to the extent that HK had any complaints at all as the result of the automobile accident – they were limited to musculoskeletal complaints.

(iii)    On August 31, 2016, K. Jung and Accident Pain Wellness billed GEICO under CPT code 99203 for an initial examination that K. Jung performed on an Insured named YR, and thereby represented that they had provided a "detailed" physical examination to YR. However, K. Jung did not document an extended examination of YR's musculoskeletal system, despite the fact that – to the extent that YR had any complaints at all as the result of the automobile accident – they were limited

**Williams Kastner**
1515 SW Fifth Avenue, Suite 600
Portland, OR 97201-5449
(503) 228-7967

to musculoskeletal complaints.

(iv)    On November 3, 2017, K. Jung, S. Jung, and Accident Pain Wellness billed GEICO under CPT code 99203 for an initial examination that K. Jung performed on an Insured named KA, and thereby represented that they had provided a "detailed" physical examination to KA. However, K. Jung did not document an extended examination of KA's musculoskeletal system, despite the fact that – to the extent that KA had any complaints at all as the result of the automobile accident – they were limited to musculoskeletal complaints.

(v)    On August 1, 2018, K. Jung, S. Jung, and Accident Pain Wellness billed GEICO under CPT code 99203 for an initial examination that K. Jung performed on an Insured named LC, and thereby represented that they had provided a "detailed" physical examination to LC. However, K. Jung did not document an extended examination of LC's musculoskeletal system, despite the fact that – to the extent that LC had any complaints at all as the result of the automobile accident – they were limited to musculoskeletal complaints.

75.    These are only representative examples. In the claims or initial examinations under CPT code 99203 that are identified in Exhibit "1", Accident Pain Wellness, K. Jung, and S. Jung falsely represented that they had provided "detailed" physical examinations, when in fact they had not.

76.    In the claims for initial examinations under CPT code 99203 that are identified in Exhibit "1", Accident Pain Wellness, K. Jung, and S. Jung falsely represented that they had provided "detailed" physical examinations to the Insureds in order to create a false basis for their charges for the examinations under CPT code 99203, because examinations billed under CPT code 99203 are reimbursable at higher rates than examinations that do not require the examining provider to provide "detailed" physical examinations.

/ / /

/ / /

/ / /

Page 19 -   COMPLAINT

**Williams Kastner**
1515 SW Fifth Avenue, Suite 600
Portland, OR 97201-5449
(503) 228-7967

7627471.1

### 4.      Misrepresentations Regarding the Extent of Medical Decision-Making

77.      Moreover, the use of CPT code 99203 to bill for a patient examination represents that the acupuncturist or naturopath who performed the examination engaged in "low complexity" medical decision-making.

78.      Pursuant to the CPT Assistant, the complexity of medical decision-making is measured by: (i) the number of diagnoses and/or the number of management options to be considered; (ii) the amount and/or complexity of medical records, diagnostic tests, and other information that must be retrieved, reviewed, and analyzed; and (iii) the risk of significant complications, morbidity, mortality, as well as co-morbidities associated with the patient's present problems, the diagnostic procedures, and/or the possible management options.

79.      As set forth above, pursuant to the CPT Assistant, the presenting problems that could require low complexity medical decision-making, and therefore support the use of CPT code 99203 to bill for an initial examination, typically are chronic and relatively serious problems.

80.      By contrast, to the extent that the Insureds in the claims identified in Exhibit "1", had any presenting problems at all as the result of their minor automobile accidents, the problems virtually always were minor soft tissue injuries such as sprains and strains.

81.      The diagnosis and treatment of these low severity sprains and strains did not require any legitimate, low-complexity medical decision-making.

82.      First, in Accident Pain Wellness, K. Jung, and S. Jung's claims for initial examinations identified in Exhibit "1", the initial examinations did not involve the retrieval,

Page 20 -   COMPLAINT

**Williams Kastner**
1515 SW Fifth Avenue, Suite 600
Portland, OR 97201-5449
(503) 228-7967

7627471.1

review, or analysis of any significant amount of medical records, diagnostic tests, or other information.

83.     When the Insureds in the claims identified in Exhibit "1" presented to Accident Pain Wellness, K. Jung, and S. Jung for "treatment", they did not arrive with any medical records except, at times, basic radiology reports, and mostly reported prior medical care verbally.

84.     Furthermore, prior to the initial examination, Accident Pain Wellness, K. Jung, and S. Jung neither requested any medical records from any other providers, nor conducted any diagnostic tests.

85.     Second, in Accident Pain Wellness, K. Jung, and S. Jung's claims for initial examinations identified in Exhibit "1", there was no risk of significant complications or morbidity – much less mortality – from the Insureds' relatively minor soft tissue injury complaints, to the extent that they ever had any complaints arising from automobile accidents at all.

86.     Nor, by extension, was there any risk of significant complications, morbidity, or mortality from the diagnostic procedures or treatment options provided by Accident Pain Wellness, K. Jung, and S. Jung to the extent that Accident Pain Wellness, K. Jung, and S. Jung provided any such diagnostic procedures or treatment options in the first instance.

87.     In almost every instance, any "treatments" that Accident Pain Wellness, K. Jung, and S. Jung actually provided were limited to traditional Chinese medical treatment such as acupuncture and cupping, as well as therapeutic modalities, none of which was health – or life – threatening if properly administered.

**Williams Kastner**
1515 SW Fifth Avenue, Suite 600
Portland, OR 97201-5449
(503) 228-7967

88.     Third, in Accident Pain Wellness, K. Jung, and S. Jung's claims for initial examinations identified in Exhibit "1", Accident Pain Wellness, K. Jung, and S. Jung did not consider any significant number of diagnoses or treatment options for the Insureds during the initial examinations.

89.     Rather, Accident Pain Wellness, K. Jung, and S. Jung recommended an identical course of treatment for virtually every Insured. In fact, the treatment recommendations in the initial examination reports prepared by Accident Pain Wellness, K. Jung, and S. Jung contained virtually identical language, regardless of the individual Insureds' complaints, medical histories, and/or presenting problems.

90.     To the extent that the initial examinations were conducted in the first instance, Accident Pain Wellness, K. Jung, and S. Jung provided substantially the same boilerplate series of objectively unverifiable soft tissue injury "diagnoses" for virtually every Insured, regardless of the individual circumstances regarding the Insured's purported injuries and/or complaints of pain.

91.     Based upon these fabricated "diagnoses", and as described above, Accident Pain Wellness, K. Jung, and S. Jung directed virtually every Insured to receive substantially identical, medically unnecessary acupuncture treatment, cupping treatment, and other therapeutic and naturopathic treatment regardless of the individual circumstances.

92.     For example:

(i)     On February 7, 2015, an Insured named AW was involved in an automobile accident. AW's application for PIP benefits to GEICO indicated that AW did not visit any hospital emergency room following the accident. To the extent that AW experienced any health problems at all as a result of the accident, they were of low or minimal severity. On March 26, 2015, K. Jung purported to conduct an initial examination of AW at Accident Pain Wellness. K. Jung did not retrieve,

Page 22 -  COMPLAINT

review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, K. Jung did not consider any significant number of diagnoses or management options in connection with the examination. Instead, K. Jung provided AW with the substantially similar, list of objectively unverifiable soft tissue injury "diagnoses" that he provided to virtually every other Insured. Furthermore, neither AW's presenting problems, nor the treatment plan provided to AW by K. Jung and Accident Pain Wellness, presented any risk of significant complications, morbidity, or mortality. To the contrary, AW did not need any extensive treatment at all as a result of the accident, and the treatment plan provided by K. Jung and Accident Pain Wellness consisted of medically unnecessary "hot and cold packs, manual therapy, therapeutic exercise, cupping treatment, electro-acupuncture, regular acupuncture, and infrared treatment", which did not pose the least bit of risk to AW. Even so, K. Jung and Accident Pain Wellness billed GEICO for the initial examination using CPT code 99203 and thereby falsely represented that K. Jung engaged in some legitimate, low complexity medical decision-making during the purported examination

(ii)   On May 20, 2016, an Insured named YK was involved in an automobile accident. YK's application for PIP benefits to GEICO indicated that YK did not visit any hospital emergency room following the accident. To the extent that YK experienced any health problems at all as a result of the accident, they were of low or minimal severity. On May 23, 2016, K. Jung purported to conduct an initial examination of YK at Accident Pain Wellness. K. Jung did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, K. Jung did not consider any significant number of diagnoses or management options in connection with the examination. Instead, K. Jung provided YK with the substantially similar, list of objectively unverifiable soft tissue injury "diagnoses" that he provided to virtually every other Insured. Furthermore, neither YK's presenting problems, nor the treatment plan provided to YK by K. Jung and Accident Pain Wellness, presented any risk of significant complications, morbidity, or mortality. To the contrary, YK did not need any extensive treatment at all as a result of the accident, and the treatment plan provided by K. Jung and Accident Pain Wellness consisted of medically unnecessary "hot and cold packs, manual therapy, therapeutic exercise, cupping treatment, electro-acupuncture, regular acupuncture, and infrared treatment", which did not pose the least bit of risk to YK. Even so, K. Jung and Accident Pain Wellness billed GEICO for the initial examination using CPT code 99203 and thereby falsely represented that K. Jung engaged in some legitimate, low complexity medical decision-making during the purported examination.

(iii)   On April 3, 2017, an Insured named JH was involved in an automobile accident. JH's application for PIP benefits to GEICO indicated that JH did not visit any

Page 23 -  COMPLAINT

hospital emergency room following the accident. To the extent that JH experienced any health problems at all as a result of the accident, they were of low or minimal severity. On April 14, 2017, S. Jung purported to conduct an initial examination of JH at Accident Pain Wellness. S. Jung did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, S. Jung did not consider any significant number of diagnoses or management options in connection with the examination. Instead, S. Jung provided JH with the substantially similar, list of objectively unverifiable soft tissue injury "diagnoses" that he provided to virtually every other Insured. Furthermore, neither JH's presenting problems, nor the treatment plan provided to JH by S. Jung, K. Jung, and Accident Pain Wellness, presented any risk of significant complications, morbidity, or mortality. To the contrary, JH did not need any extensive treatment at all as a result of the accident, and the treatment plan provided by S. Jung, K. Jung, and Accident Pain Wellness consisted of medically unnecessary manipulative treatment, laser therapy, therapeutic exercise, acupuncture treatment and Epsom salt baths, none of which posed the least bit of risk to JH. Even so, S. Jung, K. Jung and Accident Pain Wellness billed GEICO for the initial examination using CPT code 99203 and thereby falsely represented that S. Jung engaged in some legitimate, low complexity medical decision-making during the purported examination.

(iv)   On November 28, 2017, an Insured named SL was involved in an automobile accident. SL's application for PIP benefits to GEICO indicated that SL did not visit any hospital emergency room following the accident. To the extent that SL experienced any health problems at all as a result of the accident, they were of low or minimal severity. On December 4, 2017, K. Jung purported to conduct an initial examination of SL at Accident Pain Wellness. K. Jung did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, K. Jung did not consider any significant number of diagnoses or management options in connection with the examination. Instead, K. Jung provided SL with the substantially similar, list of objectively unverifiable soft tissue injury "diagnoses" that he provided to virtually every other Insured. Furthermore, neither SL's presenting problems, nor the treatment plan provided to SL by K. Jung and Accident Pain Wellness, presented any risk of significant complications, morbidity, or mortality. To the contrary, SL did not need any extensive treatment at all as a result of the accident, and the treatment plan provided by K. Jung and Accident Pain Wellness consisted of medically unnecessary "hot and cold packs, manual therapy, therapeutic exercise, cupping treatment, electro-acupuncture, regular acupuncture, and infrared treatment", none of which posed the least bit of risk to SL. Even so, K. Jung and Accident Pain Wellness billed GEICO for the initial examination using CPT code 99203 and thereby falsely represented that K. Jung engaged in some legitimate, low complexity medical decision-making

Page 24 -  COMPLAINT

during the purported examination.

(v)    On March 17, 2019, an Insured named MP was involved in an automobile accident. MP's application for PIP benefits to GEICO indicated that MP did not visit any hospital emergency room following the accident. To the extent that MP experienced any health problems at all as a result of the accident, they were of low or minimal severity. On March 18, 2019, S. Jung purported to conduct an initial examination of MP at Accident Pain Wellness. S. Jung did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, S. Jung did not consider any significant number of diagnoses or management options in connection with the examination. Instead, S. Jung provided MP with the substantially similar, list of objectively unverifiable soft tissue injury "diagnoses" that he provided to virtually every other Insured. Furthermore, neither MP's presenting problems, nor the treatment plan provided to MP by S. Jung, K. Jung, and Accident Pain Wellness, presented any risk of significant complications, morbidity, or mortality. To the contrary, MP did not need any extensive treatment at all as a result of the accident, and the treatment plan provided by S. Jung, K. Jung, and Accident Pain Wellness consisted of medically unnecessary manipulative treatment, laser therapy, therapeutic exercise, acupuncture treatment and Epsom salt baths, none of which posed the least bit of risk to MP. Even so, S. Jung, K. Jung and Accident Pain Wellness billed GEICO for the initial examination using CPT code 99203 and thereby falsely represented that S. Jung engaged in some legitimate, low complexity medical decision-making during the purported examination.

93.    There are a substantial number of variables that can affect whether, how, and to what extent an individual is injured in a given automobile accident.

94.    An individual's age, height, weight, general physical condition, location within the vehicle, and the location of the impact all will affect whether, how, and to what extent an individual is injured in a given automobile accident.

95.    As set forth above, in the claims identified in Exhibit "1", virtually all of the Insureds whom Accident Pain Wellness, K. Jung, and S. Jung purported to treat were involved in relatively minor accidents to the extent that they were involved in any actual accidents at all.

Page 25 -  COMPLAINT

96.    It is extremely improbable that any two Insureds involved in any one of the minor automobile accidents in the claims identified in Exhibit "1" would suffer substantially identical injuries as the result of their accidents, or require a substantially identical course of treatment.

97.    It is even more improbable – to the point of impossibility – that this would occur repeatedly, often with the Insureds presenting at Accident Pain Wellness with substantially identical injuries <u>on or about the exact same dates</u> after their accidents.

98.    Even so, in keeping with the fact that Accident Pain Wellness, K. Jung, and S. Jung's initial examinations involved no actual medical decision-making at all, Accident Pain Wellness, K. Jung, and S. Jung frequently issued substantially identical "diagnoses", on or about the same date, to more than one Insured involved in a single accident, and recommended a substantially identical course of medically unnecessary "treatment" to the Insureds.

99.    For example:

(i)    On February 7, 2015, <u>four</u> Insureds – AL, AW, NW, and SW – were involved in an automobile accident. Thereafter, on March 26, 2015, AW presented at Accident Pain Wellness for an initial examination by K. Jung. Then – four days later – on March 30, 2015, AL presented to Accident Pain Wellness for an initial examination by K. Jung. Only two days later – on April 1, 2015 – NW also presented at Accident Pain Wellness for an initial examination by K. Jung. Then, on April 15, 2015, SW presented at Accident Pain Wellness for an initial examination by K. Jung. AL, AW, NW and SW were all different ages, in different physical conditions, and experienced the impact from different locations in the vehicle, and suffered different injuries in the accident, to the extent they suffered any injuries at all. Even so, at the conclusion of the initial examinations, K. Jung provided AL, AW, NW, and SW with substantially identical "diagnoses", and recommended a substantially identical course of medically unnecessary treatment for all of them.

(ii)    On May 8, 2016, two Insureds – LG and AO – were involved in an automobile accident. Thereafter, LG and AO both presented – incredibly, on the exact same date, May 12, 2016 – to Accident Pain Wellness for purported initial examinations by K. Jung. LG and AO were different ages, in different physical conditions, experienced the impact from different locations in the vehicle, and suffered

**Williams Kastner**
1515 SW Fifth Avenue, Suite 600
Portland, OR 97201-5449
(503) 228-7967

7627471.1

different injuries in the accident, to the extent that they suffered any injuries at all. Even so, at the conclusion of the initial examinations, K. Jung provided LG and OH with substantially identical "diagnoses" and recommended a substantially identical course of medically unnecessary treatment for both of them.

(iii)    On December 14, 2016, two Insureds – HJ and LJ – were involved in an automobile accident. Thereafter, HJ and LJ both presented – incredibly, on the exact same date, January 4, 2017 – to Accident Pain Wellness for purported initial examinations by S. Jung. HJ and LJ were different ages, in different physical conditions, experienced the impact from different locations in the vehicle, and suffered different injuries in the accident, to the extent they suffered any injuries at all. Even so, at the conclusion of the initial examinations, S. Jung provided HJ and LJ with substantially identical "diagnoses" and recommended a substantially identical course of medically unnecessary treatment for both of them.

(iv)    On April 13, 2017, two Insureds – HH and JH – were involved in an automobile accident. Thereafter, HH and JH both presented – incredibly, on the exact same date, April 14, 2017 – to Accident Pain Wellness for purported initial examinations by S. Jung. HH and JH were different ages, in different physical conditions, experienced the impact from different locations in the vehicle, and suffered different injuries in the accident, to the extent they suffered any injuries at all. Even so, at the conclusion of the initial examinations, S. Jung provided HH and JH with substantially identical "diagnoses" and recommended a substantially identical course of medically unnecessary treatment for both of them.

(v)    On November 20, 2019, three Insureds – BK, SJ, and NJ – were involved in an automobile accident. Thereafter, BK, and SJ both presented – incredibly, on the exact same date, December 10, 2019 – to Accident Pain Wellness for purported initial examinations by S. Jung. Moreover, on that same date, December 10, 2019, NJ presented to Accident Pain Wellness for a purported initial examination by K. Jung. BK, SJ, and NJ were different ages, in different physical conditions, experienced the impact from different locations in the vehicle, and suffered different minor injuries in the accident, to the extent they suffered any injuries at all. Even so, at the conclusion of the initial examinations, S. Jung and K. Jung provided BK, SJ, and NJ with substantially identical "diagnoses", and recommended a substantially identical course of medically unnecessary treatment for all of them.

100.    These are only representative examples. In the claim for initial examinations that are identified in Exhibit "1", Accident Pain Wellness, K. Jung, and S. Jung frequently issued substantially identical "diagnoses", on or about the same date, to more than one Insured involved

**Williams Kastner**
1515 SW Fifth Avenue, Suite 600
Portland, OR 97201-5449
(503) 228-7967

in a single accident, and recommended a substantially identical course of medically unnecessary "treatment" to the Insureds, despite the fact that the Insureds were differently situated and in any case did not require the treatment.

101.    Accident Pain Wellness, K. Jung, and S. Jung routinely inserted these "diagnoses" in their initial examination reports in order to create the false impression that the initial examinations required some legitimate medical decision-making, and in order to create a false justification for the other Unlawful Services that the Defendants provided to the Insureds.

102.    In the claims for initial examinations in Exhibit "1", Accident Pain Wellness, K. Jung, and S. Jung routinely falsely represented that the examinations involve medical decision making of low complexity in order to provide a false basis to bill for the initial examinations under CPT code 99203, because examinations billable under CPT code 99203 are reimbursable at a higher rate than examinations that do not require any complex medical decision making at all.

### 5.    Misrepresentations Regarding Whether the Initial Examinations Were Conducted At All

103.    In addition to the misrepresentations regarding the extent of medical decision-making, the amount of time spent with Insureds and their families, the extent of the physical examinations, and the severity of the Insureds' presenting problems, the Defendants routinely falsely represented that the initial examinations were conducted in the first instance.

104.    In fact, Accident Pain Wellness, K. Jung, and S. Jung routinely generated fabricated examination reports – including patient "histories" and treatment recommendations – in order to create the appearance that the examinations were legitimately conducted, when in fact

Page 28 -  COMPLAINT

they were not.

105.    Accident Pain Wellness, K. Jung, and S. Jung knew that, in order to justify their use of CPT code 99203 for their examinations, they needed to create the appearance that they took legitimate patient histories as part of those examinations.

106.    Accident Pain Wellness, K. Jung, and S. Jung were also aware that, in order to justify their use of CPT code 99203 for their examinations, they needed to create the appearance that they engaged in some level of legitimate, complex, medical decision-making during their examinations.

107.    However, because the results of the initial examinations were pre-determined, Accident Pain Wellness, K. Jung, and S. Jung virtually never took legitimate patient histories as part of their initial examinations.

108.    Moreover, because the results of the initial examinations were pre-determined, Accident Pain Wellness, K. Jung, and S. Jung virtually never engaged in any medical decision-making at all to make treatment recommendations on a case by case basis.

109.    Instead, in order to create the appearance that they had legitimately performed the billed-for examinations, Accident Pain Wellness, K. Jung, and S. Jung fabricated large portions of the reports of their patient examinations.

110.    To the extent that the Insureds in the claims in Exhibit "1" were involved in automobile accidents, those accidents varied in terms of mechanism, type of collision (i.e., rear-end, single vehicle, side swipe), and force of impact.

111.    It is highly improbable – to the point of impossibility – that virtually all of the Insureds who presented to Accident Pain Wellness for "treatment" were involved in substantially

Page 29 -   COMPLAINT

**Williams Kastner**
1515 SW Fifth Avenue, Suite 600
Portland, OR 97201-5449
(503) 228-7967

identical automobile accidents, and reacted to those accidents in identical fashion.

112.    However, because Accident Pain Wellness, K. Jung, and S. Jung virtually never took any legitimate patient histories, Accident Pain Wellness, K. Jung, and S. Jung simply reported that virtually every Insured had been involved in a substantially identical accident, and had responded to that accident in substantially the same way.

113.    In particular, in the examinations performed by K. Jung, Accident Pain Wellness, K. Jung, and S. Jung described the nature of each Insured's accident in the following virtually identical manner:

> The history of injury, as obtained from the patient, revealed that the patient as the [*driver or passenger*] of the vehicle involved in an automobile accident on [*date of accident*]. The patient related that the patient was not prepared for the sudden impact from the other party's vehicle at the time of the accident although the patient was wearing a seat restraint.
> …
> The forceful impact caused a tenseness of the patient's body while jerking on the neck and jolting/tilting the torso back and forth.

114.    Similarly, virtually all of the examination reports generated in connection with examinations conducted by K. Jung on behalf of Accident Pain Wellness included a "treatment and clinical course" section consisted of the following substantially identical language:

> The treatments were designed to strengthen the injured muscles, improve range of motion, and alleviate the patient's symptoms, which include hot and cold packs, manual therapy, therapeutic exercise, cupping treatment, electro-acupuncture, acupuncture, infrared lamp treatment and physical therapy aqua massage treatment.

115.    Moreover, at the conclusion of each of the initial examinations purportedly performed by K. Jung, Accident Pain Wellness, K. Jung, and S. Jung recommended each Insured undergo an identical course of treatment of: (i) "hot and cold packs"; (ii) "manual therapy"; (iii) "therapeutic exercise"; (iv) "cupping treatment"; (v) "electro-acupuncture"; (vi) "regular acupuncture"; (vii) "infrared treatment"; and (viii) "additional 30 minutes of electro-acupuncture

Page 30 -   COMPLAINT

or regular acupuncture treatment with infrared lamp in order to promote healing with functional improvement and reduce inflammation, pain, and discomfort".

116.    These <u>identical</u> "descriptions" of the Insureds' accidents, along with these <u>identical</u> treatment recommendations, were <u>all</u> included in virtually every one of the reports for initial examinations purportedly conducted by K. Jung, including but not limited to the initial examinations of the following Insureds on the following dates:

(i)      SC, on April 9, 2014;

(ii)     TO, on October 31, 2014;

(iii)    AW, on March 26, 2014;

(iv)     AL, on March 30, 2014;

(v)      SW, on April 1, 2014;

(vi)     NL, on October 30, 2015;

(vii)    WJ, on November 19, 2015;

(viii)   HK, on December 21, 2015;

(ix)     YK, on December 22, 2015;

(x)      LG, on May 12, 2016;

(xi)     AO, on May 12, 2016;

(xii)    YK, on May 23, 2016;

(xiii)   YR, on August 31, 2016;

(xiv)    YJ, on October 19, 2017;

(xv)     CK, on November 3, 2017;

(xvi)    JO, on November 9, 2017;

Page 31 -  COMPLAINT

(xvii)   SL, on December 4, 2017;

(xviii)  LC, on August 1, 2018;

(xix)    JP, on March 18, 2019; and

(xx)     MS, on May 20, 2019.

117.    These are only representative examples. In the claims for initial examinations identified in Exhibit "1" performed by K. Jung, Accident Pain Wellness, K. Jung, and S. Jung virtually always falsely reported that Insureds had been involved in substantially identical accidents, had responded to those accidents in substantially the same way, and recommended an identical course of treatment for each of them.

118.    Along similar lines, it is highly improbable – to the point of medical impossibility – that virtually all of the Insureds whom S. Jung purported to examine on behalf of Accident Pain Wellness experienced identical injuries as the result of their accidents.

119.    Even so, and in keeping with the fact that the examinations were never legitimately provided in the first instance, in the claims for initial examinations identified in Exhibit "1" performed by S. Jung, Accident Pain Wellness, K. Jung, and S. Jung virtually always falsely reported that Insureds had suffered virtually identical injuries as the result of their accidents.

120.    In particular, in virtually all of the examination reports generated in connection with the examinations performed by S. Jung, Accident Pain Wellness, K. Jung, and S. Jung reached the following identical "assessment" of each Insured:

> [*Name/age*] PTC sustained injuries from MVA which occurred on [*date*]. PEs reveal that segmental and somatic dysfunction on cervical, thoracic, lumbosacral and R/L upper extremity.

**Williams Kastner**
1515 SW Fifth Avenue, Suite 600
Portland, OR 97201-5449
(503) 228-7967

7627471.1

121.    This identical "assessment" appeared in virtually all of the examination reports generated in connection with the examinations performed by S. Jung, including but not limited to the initial examinations of the following Insureds on the following dates:

(i)      CH, on January 4, 2017;

(ii)     HH, on April 14, 2017;

(iii)    JH, on April 14, 2017;

(iv)    AN, on July 20, 2018;

(v)     CH, on August 28, 2018;

(vi)    SJ, on December 10, 2019;

(vii)   BK, on December 10, 2019;

122.    These are only representative examples. In the claims for initial examinations identified in Exhibit "1" performed by S. Jung, Accident Pain Wellness, K. Jung, and S. Jung virtually always falsely reported that Insureds had suffered virtually identical injuries as the result of their accidents.

123.    K. Jung, Accident Pain Wellness, K. Jung, and S. Jung routinely falsified their initial examination reports in order to create the false appearance that those examinations were legitimately performed in the first instance and that the examinations met the requirements under CPT code 99203, when in fact they were not and did not.

A.      **The Unlawful Charges for Acupuncture Services at Accident Pain Wellness**

124.    K. Jung, S. Jung, and Accident Pain Wellness also provided acupuncture services solely to maximize the billing submitted to insurers, without regard to the medical necessity of the services or the requirements for proper billing under Oregon's PIP Law.

**Williams Kastner**
1515 SW Fifth Avenue, Suite 600
Portland, OR 97201-5449
(503) 228-7967

7627471.1

125.    As set forth in Exhibit "1", based upon the "diagnoses" that Accident Pain Wellness, K. Jung, and S. Jung provided during their initial examinations, Accident Pain Wellness, K. Jung, and S. Jung purported to subject many Insureds to a series of medically unnecessary acupuncture treatments.

126.    In particular, and as set forth in Exhibit "1", these acupuncture treatments, including acupuncture with electrical stimulation, typically billed to GEICO under CPT code 97813, acupuncture without electrical stimulation, typically billed to GEICO under CPT code 97811, and cupping therapies, typically billed under CPT codes 97039 and 97140.

127.    K. Jung purported to personally administer the acupuncture treatments in the claims identified in Exhibit "1".

128.    Like the charges for the other Unlawful Services, the charges for the acupuncture treatments identified in Exhibit "1" were unlawful in the treatments were medically unnecessary and were performed pursuant to the pre-determined acupuncture protocol carried out by the Defendants.

129.    Moreover, in many of the claims for acupuncture treatments identified in Exhibit "1", the charges for the acupuncture treatments were unlawful in that they misrepresented that the acupuncture services were performed by a licensed acupuncturist, when in fact they were not.

### 1.    Legitimate Acupuncture Practices

130.    Acupuncture is predicated upon the theory that there are twelve main meridians ("the Meridians") in the human body through which energy flows. Every individual has a unique energy flow ("Chi") or, more particularly, unique patterns of underlying strengths and weaknesses in the flow of Chi that are impacted differently from trauma. When an individual's

**Williams Kastner**
1515 SW Fifth Avenue, Suite 600
Portland, OR 97201-5449
(503) 228-7967

unique Chi becomes disrupted or imbalanced for any reason (such as trauma), needles can be inserted or pressure can be applied to very specific points ("Acupuncture Points") along the Meridians to remove the disruption or imbalance and restore the patient's unique Chi.

131.    The goal of any legitimate acupuncture treatment is to effectively treat and benefit the patient by restoring his or her unique Chi, relieving his or her symptoms, and returning him or her to normal activity.

132.    Since every individual has a unique Chi, acupuncture treatment should be individualized.   In fact, the differences in each individual's unique patterns of underlying strengths and weaknesses in the flow of Chi should be reflected in different treatment strategies.

133.    The first step in any legitimate acupuncture treatment is a physical examination of the patient. The two most critical components of this examination are the appearance of the patient's tongue (i.e., color, shape, texture, etc.) and various measurements of the patient's pulse (i.e., rate, rhythm, strength, etc.). The information gleaned from these elements of the physical examination is necessary to diagnose the patient's condition and thereby develop an acupuncture treatment plan designed to benefit the patient by restoring his unique Chi.  In cases involving trauma – such as an automobile accident - an actual physical examination also is appropriate to identify the location of the injury and consequent pain and – by extension – to identify the Meridians, if any, that have been disrupted.

134.    The second step in any legitimate acupuncture treatment is the development of an acupuncture treatment plan. In developing a legitimate treatment plan, an acupuncturist will consider both the injuries sustained by the patient, as well as the tongue and pulse information obtained during the physical examination. Using this information, the acupuncturist will identify

**Williams Kastner**
1515 SW Fifth Avenue, Suite 600
Portland, OR 97201-5449
(503) 228-7967

7627471.1

a unique, cohesive, and individualized set of Acupuncture Points into which needles can be inserted or pressure can be applied to restore the patient's Chi and address the patient's discrete injuries.

135.    In developing a legitimate acupuncture treatment plan, an acupuncturist may choose from at least 360 discrete Acupuncture Points. Any legitimate acupuncture treatment plan should include the use of both "local" Acupuncture Points (i.e., points near the affected areas of the relevant Meridian), and "distal" Acupuncture Points (i.e., points that are distant from the affected areas of the relevant Meridian).

136.    The third step in any legitimate acupuncture treatment is the implementation of the acupuncture treatment plan.  If performed legitimately, this step in the treatment typically will involve insertion of between 10 and 20 acupuncture needles into between five and 10 Acupuncture Points for a minimum of 20 minutes. Within these parameters, the number and location of the Acupuncture Points generally will vary based upon the unique circumstances presented by each patient as well as each patient's individual therapeutic response to each acupuncture treatment.

137.    Any legitimate acupuncture treatment plan requires a continuous assessment of the patient's condition and energy flow, as well as the therapeutic effect of previous treatments. Acupuncture treatment plans are fluid and evolve over time. Therefore, the goal of any legitimate acupuncture treatment plan is to make appropriate adjustments as treatment progresses in order to improve the therapeutic effectiveness of each treatment, and eventually to return the patient to maximum health by restoring his or her unique energy flow.

Page 36 -   COMPLAINT

138.    Any legitimate acupuncture treatment also requires meaningful, genuine, and individualized documentation of the: (i) physical examination; (ii) diagnosis; (iii) treatment plan; (iv) results of each session; and (v) the patient's progress throughout the course of treatment. This also includes documentation of the points used during the treatment, and, in the case of re-insertion of the needles, the points where the needles were re-inserted.

139.    Moreover, any legitimate acupuncture treatment with electrical stimulation requires additional documentation of: (i) the points that were treated with electrical stimulation; (ii) the type of stimulation (i.e., microamps, milliamps, etc.); (iii) the level of amps used; (iv) the frequency or frequencies used; (v) the actual time of application; and (vi) the condition that the points are being used to treat. Specifically, the type of electrical stimulation used is of particular importance because the use of electrical stimulation at the milliamp level temporarily "knocks out" the effect of manual acupuncture done on the same day.

### 2.    The Defendants' Unlawful Treatment Protocols for Acupuncture Services

140.    K. Jung, S. Jung, and Accident Pain Wellness treated each patient without regard for any necessary individual treatment strategies, without regard for any necessary adjustments sin treatment as treatment progresses over time, and without meaningful, genuine, and individualized documentation.

### a.    The Unlawful and Medically Unnecessary Acupuncture Treatment Practices

141.    At best, the purported "acupuncture" treatments provided by K. Jung, S. Jung, and Accident Pain Wellness consisted of inserting needles into Insureds in a pre-determined manner that bore little, if any, relation to the Insured's condition and instead reflected a treatment protocol whose sole purpose was designed to enrich K. Jung, S. Jung, and Accident Pain Wellness through

**Williams Kastner**
1515 SW Fifth Avenue, Suite 600
Portland, OR 97201-5449
(503) 228-7967

7627471.1

the submission of charges to GEICO and other insurers.

142.    As established above, the first step in any legitimate acupuncture treatment is a physical examination of the patient. However, K. Jung, S. Jung, and Accident Pain Wellness virtually never conducted any legitimate examinations or evaluations of the Insureds they purportedly treated.

143.    Moreover, as a result of K. Jung, S. Jung, and Accident Pain Wellness's failure to conduct or document legitimate physical examinations of the Insureds, K. Jung, S. Jung, and Accident Pain Wellness did not develop discrete treatment plans designed to treat the individual Insureds.

144.    Instead, in nearly every case, the initial recommendation from K. Jung, S. Jung, and Accident Pain Wellness was to treat two to three times per week, regardless of the severity of the accident, regardless of the patient's age, regardless of the patient's past medical history – including, at times, previous acupuncture treatment at Accident Pain Wellness – and regardless of the type of injury. These unvarying recommendations formed the basis for a systematized treatment and billing scheme designed to create inflated billings and render medically unnecessary care.

145.    In keeping with the fact that the acupuncture initial evaluations were unlawful, K. Jung, S. Jung, and Accident Pain Wellness never conducted or documented an examination of the appearance of the patient's tongue (i.e., color, shape, texture, etc.) or the various movements of the patient's pulse (i.e., rate, rhythm, strength, etc.). Moreover, K. Jung, S. Jung, and Accident Pain Wellness routinely failed to identify any Meridians which had been disrupted as a result of the purported trauma.

**Williams Kastner**
1515 SW Fifth Avenue, Suite 600
Portland, OR 97201-5449
(503) 228-7967

7627471.1

146.    Furthermore, the lack of documentation of the purported acupuncture treatments rendered by K. Jung and Accident Pain Wellness demonstrates that no genuine effort was made to treat the patient's actual injuries, to properly assess their condition, to track their improvement or lack of improvement, or to adjust the treatment to reflect the patients' improvement or lack of improvement.

147.    In reality, in the claim identified in Exhibit "1", K. Jung, S. Jung, and Accident Pain Wellness provided the acupuncture services – to the extent they provided them at all – in order to maximize the amount of billing they could submit to GEICO, rather than to treat or otherwise benefit their patients.

### b.  The Unlawful and Medically Unnecessary Cupping Treatment Practices

148.    K. Jung, S. Jung, and Accident Pain Wellness further inflated their billing by charging for an acupuncture procedure known as cupping.

149.    Cupping is – at best – an intermittent treatment, since the act of cupping dredges up stagnant blood and leaves bruises in the application area. Once stagnant blood has been moved, additional cupping is unnecessary.

150.    It often takes four to six days to fully see the results of cupping services.

151.    Even so, in the claims for cupping identified in Exhibit "1", yet K. Jung, S. Jung, and Accident Pain Wellness routinely provided multiple rounds of cupping therapy to the Insureds within a span of days, despite the fact that such a treatment regimen was medically unnecessary.

152.    For example:

(i)    K. Jung and Accident Pain Wellness provided cupping therapy to an Insured named OT on November 3, 2014, November 5, 2014, November 7, 2014,

Page 39 -  COMPLAINT

**Williams Kastner**
1515 SW Fifth Avenue, Suite 600
Portland, OR 97201-5449
(503) 228-7967

November 19, 2014, November 21, 2014, November 24, 2014, November 26, 2014, December 10, 2014, December 12, 2014, December 17, 2014, December 19, 2014, January 14, 2015, January 16, 2015, January 21, 2015, January 23, 2015, January 27, 2015, and January 29, 2015.

(ii)     K. Jung and Accident Pain Wellness provided cupping therapy to an Insured named NL on November 2, 2015, November 4, 2015, November 6, 2015, November 9, 2015, November 11, 2015, November 14, 2015, November 16, 2015, November 17, 20115, November 19, 2015, November 23, 2015, November 25, 2015, November 30, 2015, December 3, 2015, December 7, 2015, December 10, 2015, December 15, 2015, December 18, 2015, December 21, 2015, December 23, 2015, December 28, 2015, December 31, 2015, January 4, 2016, January 7, 2016, January 11, 2016, January 14, 2016, January 18, 2016, and January 21, 2016.

(iii)    K. Jung and Accident Pain Wellness provided cupping therapy to an Insured named YK on December 24, 2015, December 30, 2015, December 31, 2015, January 5, 2016, January 12, 2016, January 20, 2016, January 27, 2016, February 3, 2016, February 6, 2016, February 10, 2016, February 13, 2016, February 15, 2016, February 17, 2016, February 22, 2016, February 24, 2016, February 29, 2016, and March 3, 2016.

(iv)    K. Jung and Accident Pain Wellness provided cupping therapy to an Insured named AO on May 12, 2016, May 13, 2016, May 14, 2016, May 17, 2016, May 19, 2016, May 21, 2016, May 24, 2016, May 26, 2016, May 28, 2016, May 31, 2016, June 2, 2016, June 4, 2016, June 7, 2016, June 9, 2016, June 11, 2016, June 14, 2016, June 17, 2016, June 21, 2016, June 23, 2016, June 27, 2016, June 30, 2016, July 5, 2016, July 8, 2016, July 11, 2016, July 14, 2016, July 19, 2016, July 22, 2016, July 25, 2016, July 28, 2016, August 2, 2016, August 4, 2016, and August 8, 2016.

(v)     K. Jung and Accident Pain Wellness provided cupping therapy to an Insured named YR on August 31, 2016, September 8, 2016, September 10, 2016, September 14, 2016, September 17, 2016, September 19, 2016, September 21, 2016, September 23, 2016, September 26, 2016, September 28, 2016, September 30, 2016, October 3, 2016, October 4, 2016, October 7, 2016, October 11, 2016, October 14, 2016, October 18, 2016, October 21, 2016, October 25, 2016, October 28, 2016, November 1, 2016, November 4, 2016, November 8, 2016, November 11, 2016, November 15, 2016, November 18, 2016, November 21, 2016, November 23, 2016, November 28, 2016, December 1, 2016, December 5, 2016, December 8, 2016, December 12, 2016, December 15, 2016, December 19, 2016, December 22, 2016, December 26, 2016, December 29, 2016, January 3, 2017, January 6, 2017, January 9, 2017, January 12, 2017, January 17, 2017, January 19, 2017, January 23, 2017, January 26, 2017, and January 30, 2017.

**Williams Kastner**
1515 SW Fifth Avenue, Suite 600
Portland, OR 97201-5449
(503) 228-7967

(vi)     K. Jung, S. Jung, and Accident Pain Wellness provided cupping therapy to an Insured named HH on April 14, 2017, April 15, 2017, April 18, 2017, April 20, 2017, April 22, 2017, April 24, 2017, April 26, 2017, April 28, 2017, May 2, 2017, May 4, 2017, May 6, 2017, May 8, 2017, May 10, 2017, May 12, 2017, May 15, 2017, May 17, 2017, May 19, 2017, May 23, 2017, May 26, 2017, and May 29, 2017.

(vii)    K. Jung, S. Jung, and Accident Pain Wellness provided cupping therapy to an Insured named JH on April 14, 2017, April 15, 2017, April 17, 2017, April 19, 2017, April 21, 2017, April 24, 2017, April 26, 2017, and April 28, 2017. K. Jung and Accident Pain Wellness also provided cupping therapy to JH on June 2, 2017, June 5, 2017, June 8, 2017, June 12, 2017, June 15, 2017, June 19, 2017, June 22, 2017, June 26, 2017, June 29, 2017, and July 1, 2017.

(viii)   K. Jung, S. Jung, and Accident Pain Wellness provided cupping therapy to an Insured named BC on March 17, 2018, March 20, 2018, March 22, 2018, March 24, 2018, March 28, 2018, March 31, 2018, April 4, 2018, April 11, 2018, April 14, 2018, April 18, 2018, April 21, 2018, April 24, 2018, April 27, 2018, May 1, 2018, and May 3, 2018.

(ix)     K. Jung, S. Jung, and Accident Pain Wellness provided cupping therapy to an Insured named NJ on April 15, 2019, April 16, 2019, April 17, 2019, April 19, 2019, April 22, 2019, April 24, 2019, April 25, 2019, April 26, 2019, April 29, 2019, April 30, 2019, May 1, 2019, May 3, 2019, May 6, 2019, May 8, 2019, May 10, 2019, May 14, 2019, May 15, 2019, May 17, 2019, May 20, 2019, May 22, 2019, May 23, 2019, May 28, 2019, May 29, 2019, May 31, 2019, June 5, 2019, June 8, 2019, June 12, 2019, and June 19, 2019.

(x)      K. Jung, S. Jung, and Accident Pain Wellness provided cupping therapy to an Insured named BK on December 10, 2019, December 12, 2019, December 16, 2019, December 18, 2019, December 23, 2019, December 26, 2019, December 30, 2019, January 3, 2020, January 6, 2020, January 9, 2020, January 14, 2020, January 17, 2020, January 20, 2020, January 23, 2020, January 27, 2020, January 30, 2020, February 4, 2020, February 7, 2020, February 11, 2020, February 14, 2020, February 18, 2020, February 21, 2020, February 25, 2020, and February 28, 2020.

153.     These are only representative examples. In the claims for cupping identified in Exhibit "1",  K. Jung, S. Jung, and Accident Pain Wellness routinely provided multiple cupping therapies within a span of days, or even consecutive days, solely to maximize the potential

Page 41 -  COMPLAINT

**Williams Kastner**
1515 SW Fifth Avenue, Suite 600
Portland, OR 97201-5449
(503) 228-7967

7627471.1

charges that they could submit, and caused to be submitted, to GEICO, rather than to treat or otherwise benefit the Insureds who purportedly were subjected to the cupping therapies.

154.    Moreover, in a legitimate clinical setting, a practitioner of cupping would document the location of the cups, how long the cups were placed, and for what purpose cupping was used.

155.    In keeping with the fact that the purported cupping therapies were medically unnecessary, K. Jung routinely failed to document the location of a single cup placement that was used during the cupping treatments or the purpose for the cupping therapy or placement of the cups.

156.    In addition, K. Jung and Accident Pain Wellness frequently submitted charges for cupping therapy under CPT code 97140, a code reserved for "manual therapy", i.e., services requiring the provider's use of their hands to administer therapeutic techniques.

157.    Pursuant to the CPT Assistant, examples of manual therapy billable under CPT code 97140 include joint mobilization and manipulation, manual lymphatic drainage, and manual traction.

158.    However, the provision of the cupping services at Accident Pain Wellness did not require K. Jung nor any other individual to administer any therapeutic technique with their hands.

159.    Instead, the cupping services were limited to the placement of a series of suction devices on the Insureds' bodies, and did not require the use of any individual's hands.

160.    Even so, K. Jung and Accident Pain Wellness routinely billed their cupping services using CPT code 97140, thereby falsely representing that the billed-for services constituted manual therapy, when in fact they did not.

**Williams Kastner**
1515 SW Fifth Avenue, Suite 600
Portland, OR 97201-5449
(503) 228-7967

7627471.1

161.    K. Jung, S. Jung, and Accident Pain Wellness's cookie-cutter approach to the acupuncture treatments that they provided on virtually every Insured at Accident Pain Wellness was designed to maximize the charges that they could submit through Accident Pain Wellness to GEICO and other insurers.

**c.    The Unlawful Charges for Cupping Services Performed by Unlicensed Individuals**

162.    As set forth above, individuals who are not licensed to practice acupuncture, or who are not licensed physicians, may not practice acupuncture in Oregon.

163.    Moreover, pursuant to the Fee Schedule, "[o]nly treatment that falls within the scope and field of the medical provider's license to practice" is eligible for PIP Benefits.

164.    Even so, in many of the cupping services in the claims identified in Exhibit "1", the cupping services were performed – to the extent they were performed at all – by Jane Doe Defendants "1" and "2", neither or whom was a licensed acupuncturist.

165.    In many of the claims for cupping services, K. Jung, S. Jung, and Accident Pain Wellness falsely represented that K. Jung – a licensed acupuncturist who was legally authorized to administer acupuncture – was the provider or supplier of the cupping services, when in fact, the cupping services were secretly performed by Jane Doe Defendants "1" and "2".

166.    As set forth above, pursuant to the Fee Schedule, PIP billing must be accompanied by legible treatment notes that include, among other things, the identity of the personal performing the billed-for services.

167.    However, all of K. Jung, S. Jung, and Accident Pain Wellness's billing for cupping services indicated that K. Jung had performed the billed-for services, and did not

**Williams Kastner**
1515 SW Fifth Avenue, Suite 600
Portland, OR 97201-5449
(503) 228-7967

reference Jane Doe Defendants "1" or "2" – or, for that matter, any other person – as having performed the cupping services.

168. In many of the claims for acupuncture services identified in Exhibit "1", K. Jung and Accident Pain Wellness falsely represented that the acupuncture services were performed by individuals with the requisite licenses to perform those services, when in fact they were performed by Jane Doe Defendants "1" and "2".

**C. The Unlawful Charges for Osteopathic Manipulative Treatment**

169. Moreover, as set forth in Exhibit "1", based upon the "diagnoses" that Accident Pain Wellness, K. Jung, and S. Jung provided at the conclusion of their initial examinations, Accident Pain Wellness, K. Jung, and S. Jung purported to subject many Insureds to a series of medically unnecessary osteopathic manipulative treatment services.

170. In particular, and as set forth in Exhibit "1", these osteopathic manipulation services were typically billed to GEICO under CPT code 98926, usually resulting in a charge of $90.00 for each "session".

171. S. Jung performed the osteopathic manipulation services billed through Accident Pain Wellness to GEICO.

172. In a legitimate clinical setting, osteopathic manipulation is a form of manual treatment applied by a physician or neuropath to alleviate somatic dysfunction and related disorders.

173. Accident Pain Wellness, K. Jung, and S. Jung were aware that they would only be able to justify their osteopathic manipulation services if their patients suffered from somatic dysfunction or related disorders.

**Williams Kastner**
1515 SW Fifth Avenue, Suite 600
Portland, OR 97201-5449
(503) 228-7967

7627471.1

174.    However, virtually none of the Insureds in the claims identified in Exhibit "1" suffered from somatic dysfunction to the point that they required extensive osteopathic manipulation services from Accident Pain Wellness, K. Jung, and S. Jung.

175.    Therefore, as set forth above, at the conclusion of the initial examinations performed by S. Jung, Accident Pain Wellness, K. Jung, and S. Jung falsely represented that every Insured suffered from "segmental dysfunction on cervical, thoracic, lumbosacral, and R/L upper extremity."

176.    Accident Pain Wellness, K. Jung, and S. Jung also know that, in order to justify the use of CPT code 98926, their patients needed to experience somatic dysfunction and related disorders in at least three separate regions of their body.

177.    Therefore, Accident Pain Wellness, K. Jung, and S. Jung's intentionally included four separate "regions" of somatic dysfunction in each of their supposed diagnoses – i.e., cervical, lumbar, thoracic, and upper extremities – so as to create a false justification for their charges under CPT code 98926. This, despite the fact that it was highly improbable – to the point of medical impossibility – that virtually all of the Insureds identified in Exhibit "1" experienced somatic dysfunction in all of those regions.

178.    In reality, the charges for the osteopathic manipulation services – like the charges for the other Unlawful Services – were unlawful in the treatments were medically unnecessary, and were performed pursuant to a pre-determined treatment protocol designed to maximize the amount of unlawful billing the Defendants could submit to GEICO.

### D.    The Unlawful Charges for Therapeutic Services

179.    In addition, as set forth in Exhibit "1", based upon the "diagnoses" that Accident

**Williams Kastner**
1515 SW Fifth Avenue, Suite 600
Portland, OR 97201-5449
(503) 228-7967

Pain Wellness, K. Jung, and S. Jung provided at the conclusion of their initial examinations, Accident Pain Wellness, K. Jung, and S. Jung purported to subject many Insureds to a series of medically unnecessary purported therapeutic services.

180.    K. Jung and S. Jung performed the therapeutic services on behalf of Accident Pain Wellness.

181.    As set forth in Exhibit "1", Accident Pain Wellness, K. Jung, and S. Jung charges for therapeutic services typically consisted of charges for: (i) infrared lamp treatment under CPT code 97026, typically resulting in charges of $10.22 or $11.00; (ii) hot/cold packs under CPT code 97010, typically resulting in charges of $10.22 or $11.00; (iii) therapeutic exercise under CPT code 97110, typically resulting in charges of $53.38 or $55.00; (iv) laser therapy under CPT code 97039, typically resulting in a charges between $44.00 and $120.00; and (v) electrical stimulation under CPT code 97032, typically resulting in a charge of $35.00.

182.    Like the charges for the other Unlawful Services, the charges for the therapeutic services were unlawful in the treatments were medically unnecessary and were performed pursuant to a pre-determined treatment protocol designed to maximize the amount of fraudulent billing the Defendants could submit to GEICO.

183.    In a legitimate clinical setting, the particular therapeutic services that are provided to a patient should be tailored to that patient's individual circumstances and presentment.

184.    In keeping with the fact that the purported therapeutic services that were billed through Accident Pain Wellness to GEICO were not medically necessary, the Defendants did not tailor the therapeutic services they provided to each Insured's individual circumstances and presentment.

**Williams Kastner**
1515 SW Fifth Avenue, Suite 600
Portland, OR 97201-5449
(503) 228-7967

185.    However, the Defendants routinely provided the same handful of therapeutic "treatments" to virtually every Insured in the claims identified in Exhibit "1", without regard for the Insureds' individual circumstances.

186.    Specifically, the Defendants provided virtually every Insured in the claims identified in Exhibit "1" with a substantially identical course of therapeutic services. This, despite the fact that the Insureds were differently situated, and could not possibly all have required a substantially-identical course of therapeutic services.

### III.    The Unlawful Billing Submitted to GEICO

187.    To support their unlawful charges, the Defendants systematically submitted or caused to be submitted hundreds of HCFA-1500 forms and treatment reports through Accident Pain Wellness, containing thousands of fraudulent charges, seeking payment for the Unlawful Services for which they were not entitled to receive payment.

188.    The claims that the Defendants submitted or caused to be submitted to GEICO were false and misleading in the following material respects:

(i)     The HCFA-1500 forms and treatment reports submitted or caused to be submitted by the Defendants uniformly misrepresented to GEICO that the Unlawful Services were medically necessary. In fact, the Unlawful Services frequently were not medically necessary and were performed as part of a pre-determined treatment and billing protocol designed to financially enrich the Defendants, not to benefit the Insureds who supposedly were subjected to them.

(ii)    The HCFA-1500 forms and treatment reports submitted or caused to be submitted by the Defendants misrepresented to GEICO that the Unlawful Services were legitimately provided in the first instance when, in many cases, they were not.

(iii)   The HCFA-1500 forms and treatment reports submitted by and on behalf of the Defendants frequently misrepresented and exaggerated the level of the Unlawful Services and the nature of the Unlawful Services that purportedly were provided in order to increase the amount of reimbursement the Defendants could unlawfully obtain.

**Williams Kastner**
1515 SW Fifth Avenue, Suite 600
Portland, OR 97201-5449
(503) 228-7967

(iv)    The HCFA-1500 forms and treatment reports submitted by and on behalf of the Defendants frequently misrepresented that the billed-for services were performed – to the extent they were performed at all – by individuals licensed to do so when, in many cases, they were not.

## IV.    The Defendants' Concealment and GEICO's Justifiable Reliance

189.    The Defendants were legally and ethically obligated to act honestly and with integrity in connection with their performance of the Unlawful Services and their submission of charges to GEICO. Even so, the Defendants knowingly misrepresented and concealed facts related to Accident Pain Wellness in an effort to prevent discovery of the fact that the Unlawful Services were unlawful and medically unnecessary.

190.    To induce GEICO to promptly pay the charges for the Unlawful Services, the Defendants systematically concealed their concealed their misrepresentations and went to great lengths to accomplish this concealment.

191.    For instance, the Defendants knowingly misrepresented and concealed facts in order to prevent GEICO from discovering that the Unlawful Services were medically unnecessary and were performed – to the extent that they were performed at all – pursuant to pre-determined protocol designed to maximize the charges that could be submitted, not to benefit the Insureds who supposedly were subject to it.

192.    Likewise, the Defendants knowingly misrepresented and concealed facts in order to prevent GEICO from discovering that the Unlawful Services frequently were never performed in the first instance.

193.    GEICO is under statutory and contractual obligations to promptly and fairly process claims. The facially-valid documents submitted to GEICO in support of the unlawful

Page 48 -  COMPLAINT

7627471.1

charges at issue, combined with the material misrepresentations and omissions described above, were designed to and did cause GEICO to rely upon them. As a result, GEICO has incurred damages of more than $300,000.00.

194.    Based upon the Defendants' material misrepresentations, omissions, and other affirmative acts of concealment, GEICO did not discover and could not reasonably have discovered that its damages were attributable to fraud until shortly before it field this Complaint.

## FIRST CAUSE OF ACTION
### Against Accident Pain Wellness
### (Declaratory Judgment – 28 U.S.C. §§ 2201 and 2202)

195.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 194 above.

196.    There is an actual case in controversy between GEICO and Accident Pain Wellness regarding the pending unlawful billing for the Unlawful Services submitted by the Defendants through Accident Pain Wellness to GEICO.

197.    Accident Pain Wellness has no right to receive payment for any pending bills submitted to GEICO because the underlying Unlawful Services were not medically necessary and were provided pursuant to pre-determined protocols designed to financially enrich the Defendants, rather than to treat or otherwise benefit the Insureds who purportedly were subjected to them.

198.    Accident Pain Wellness has no right to receive payment for any pending medical bills submitted to GEICO because, in many cases, the Unlawful Services never were legitimately provided in the first instance.

Page 49 -   COMPLAINT

199.    Accident Pain Wellness has no right to receive payment for any pending bills submitted to GEICO because the billing codes used for the underlying Unlawful Services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges submitted to GEICO.

200.    Accident Pain Wellness has no right to receive payment for any pending bills submitted to GEICO because the underlying Unlawful Services were performed by individuals who were not licensed to perform those services.

201.    Accordingly, GEICO requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that Accident Pain Wellness has no right to receive payment for any pending bills submitted to GEICO.

**SECOND CAUSE OF ACTION**
**Against K. Jung and S. Jung**
**(Violation of RICO, 18 U.S.C. §1962(c))**

202.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 194 above.

203.    Accident Pain Wellness is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities that affected interstate commerce.

204.    K. Jung and S. Jung knowingly have conducted and/or participated, directly or indirectly, in the conduct of Accident Pain Wellness's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted thousands of fraudulent charges on a continuous basis for over six years seeking payments that Accident Pain Wellness was not eligible to receive because: (i) the underlying Unlawful Services were not medically

Page 50 -  COMPLAINT

**Williams Kastner**
1515 SW Fifth Avenue, Suite 600
Portland, OR 97201-5449
(503) 228-7967

necessary and were provided pursuant to pre-determined protocols designed to financially enrich the Accident Pain Wellness Defendants, rather than to treat or otherwise benefit the Insureds who purportedly were subjected to them; (ii) in many cases, the Unlawful Services never were legitimately provided in the first instance; (iii) the billing codes used for the underlying Unlawful Services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges submitted to GEICO; and (iv) the underlying Unlawful Services were performed by individuals who were not licensed to perform those services.

205.    A representative sample of the fraudulent bills and corresponding mailings submitted to GEICO that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "1". Each such mailing was made in furtherance of the mail fraud scheme.

206.    Accident Pain Wellness's business is racketeering activity, inasmuch as it continues to submit and attempt to collect on fraudulent billing submitted to GEICO and other insurers. These inherently unlawful acts are taken by Accident Pain Wellness in pursuit of inherently unlawful goals – namely, the theft of money from GEICO and other insurers through fraudulent no-fault billing.

207.    GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $300,000.00 pursuant to the fraudulent bills submitted through Accident Pain Wellness.

208.    By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c), and any other relief the Court deems just and proper.

Page 51 -  COMPLAINT

## THIRD CAUSE OF ACTION
### Against K. Jung, S. Jung, and Jane Doe Defendants "1" and "2"
### (Violation of RICO, 18 U.S.C. § 1962(d))

209.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 194 above.

210.    Accident Pain Wellness is an ongoing "enterprise," as the term is defined in 18 U.S.C. § 1961(4), that engages in activities that affected interstate commerce.

211.    K. Jung, S. Jung, and Jane Doe Defendants "1" and "2" are employed by or associated with the Accident Pain Wellness Enterprise.

212.    K. Jung, S. Jung, and Jane Doe Defendants "1" and "2" knowingly  have agreed, combined, and conspired to conduct and/or participate, directly or indirectly, in the conduct of Accident Pain Wellness's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted thousands of fraudulent charges on a continuous basis for over six years seeking payments that Accident Pain Wellness was not eligible to receive because: (i) the underlying Unlawful Services were not medically necessary and were provided pursuant to pre-determined protocols designed to financially enrich the Accident Pain Wellness Defendants, rather than to treat or otherwise benefit the Insureds who purportedly were subjected to them; (ii) in many cases, the Unlawful Services never were legitimately provided in the first instance; (iii) the billing codes used for the underlying Unlawful Services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges submitted to GEICO; and (iv) the underlying Unlawful Services were performed by individuals who were not licensed to perform those services.

**Williams Kastner**
1515 SW Fifth Avenue, Suite 600
Portland, OR 97201-5449
(503) 228-7967

213.    A representative sample of the fraudulent bills and corresponding mailings submitted to GEICO that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "1". Each such mailing was made in furtherance of the mail fraud scheme.

214.    K. Jung, S. Jung, and Jane Doe Defendants "1" and "2" knew of and agreed to and acted in furtherance of the common and overall objective (i.e., to defraud GEICO and other automobile insurers of money) by submitted or facilitating the submission of the fraudulent charges to GEICO.

215.    GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $300,000.00 pursuant to the fraudulent bills submitted through the Accident Pain Wellness enterprise.

216.    By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1946(c), and any other relief the Court deems just and proper.

## FOURTH CAUSE OF ACTION
### Against K. Jung and S. Jung
### (Violation of ORICO, O.R.S. § 166.720(3))

217.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 194 above.

218.    Accident Pain Wellness is an ongoing "enterprise," as the term is defined in O.R.S. § 166.715(2).

219.    K. Jung and S. Jung knowingly have conducted and/or participated, directly or indirectly, in the conduct of Accident Pain Wellness's affairs through a pattern of racketeering

**Williams Kastner**
1515 SW Fifth Avenue, Suite 600
Portland, OR 97201-5449
(503) 228-7967

7627471.1

activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to knowingly submit or cause to be submitted thousands of fraudulent charges on a continuous basis for over six years seeking payments that Accident Pain Wellness was not eligible to receive because: (i) the underlying Unlawful Services were not medically necessary and were provided pursuant to pre-determined protocols designed to financially enrich the Accident Pain Wellness Defendants, rather than to treat or otherwise benefit the Insureds who purportedly were subjected to them; (ii) in many cases, the Unlawful Services never were legitimately provided in the first instance; (iii) the billing codes used for the underlying Unlawful Services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges submitted to GEICO; and (iv) the underlying Unlawful Services were performed by individuals who were not licensed to perform those services.

220.    A representative sample of the fraudulent bills and corresponding mailings submitted to GEICO that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "1". Each such mailing was made in furtherance of the fraudulent scheme.

221.    Accident Pain Wellness's business is racketeering activity, inasmuch as it continues to submit and attempt to collect on fraudulent billing submitted to GEICO and other insurers. These inherently unlawful acts are taken by Accident Pain Wellness in pursuit of inherently unlawful goals – namely, the theft of money from GEICO and other insurers through fraudulent no-fault billing.

**Williams Kastner**
1515 SW Fifth Avenue, Suite 600
Portland, OR 97201-5449
(503) 228-7967

7627471.1

222.    GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $300,000.00 pursuant to the fraudulent bills submitted through Accident Pain Wellness.

223.    By reason of K. Jung and S. Jung's conduct, GEICO is also entitled to recover reasonable attorneys' fees pursuant to O.R.S. § 166.725(14).

**FIFTH CAUSE OF ACTION**
**Against K. Jung, S. Jung, and Jane Doe Defendants "1" and "2"**
**(Violation of ORICO, O.R.S. § 166.710(4))**

224.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 194 above.

225.    Accident Pain Wellness is an ongoing "enterprise," as the term is defined in O.R.S. § 166.715(2).

226.    K. Jung, S. Jung, and Jane Doe Defendants "1" and "2" knowingly  have agreed, combined, and conspired to conduct and/or participate, directly or indirectly, in the conduct of Accident Pain Wellness's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341 and O.R.S. §§ 166.715(6)(b) and of O.R.S. § 165.692(1) and (2) and O.R.S. §§ 166.715(6)(a)(VV), based upon the use of the United States mails to knowingly submit or cause to be submitted thousands of fraudulent charges on a continuous basis for over six years seeking payments that Accident Pain Wellness was not eligible to receive because: (i) the underlying Unlawful Services were not medically necessary and were provided pursuant to pre-determined protocols designed to financially enrich the Accident Pain Wellness Defendants, rather than to treat or otherwise benefit the Insureds who purportedly were subjected to them; (ii) in many cases, the Unlawful Services never were

Page 55 -  COMPLAINT

**Williams Kastner**
1515 SW Fifth Avenue, Suite 600
Portland, OR 97201-5449
(503) 228-7967

legitimately provided in the first instance; (iii) the billing codes used for the underlying Unlawful Services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges submitted to GEICO; and (iv) the underlying Unlawful Services were performed by individuals who were not licensed to perform those services.

227.    A representative sample of the fraudulent bills and corresponding mailings submitted to GEICO that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "1". Each such mailing was made in furtherance of the fraudulent scheme.

228.    K. Jung, S. Jung, and Jane Doe Defendants "1" and "2" knew of and agreed to and acted in furtherance of the common and overall objective (i.e., to defraud GEICO and other automobile insurers of money) by submitted or facilitating the submission of the fraudulent charges to GEICO.

229.    GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $300,000.00 pursuant to the fraudulent bills submitted through the Accident Pain Wellness enterprise.

230.    By reason of K. Jung, S. Jung, and Jane Doe Defendants "1" and "2"'s conduct, GEICO is also entitled to recover reasonable attorneys' fees pursuant to O.R.S. § 166.725(14).

## <u>SIXTH CAUSE OF ACTION</u>
**Against Accident Pain Wellness, K. Jung, and S. Jung**
**(Under O.R.S. § 646.605, <u>et</u>. <u>Seq.</u>)**

231.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 194 above.

Page 56 -   COMPLAINT

**Williams Kastner**
1515 SW Fifth Avenue, Suite 600
Portland, OR 97201-5449
(503) 228-7967

232.    Accident Pain Wellness, K. Jung, and S. Jung are "persons" under O.R.S. § 646.605(4).

233.    Accident Pain Wellness, K. Jung, and S. Jung are actively engaged in "trade" and "commerce" in the State of Oregon.

234.    GEICO and its Insureds are the actual direct consumers of the services, and GEICO is the entity that is billed and expected to pay for those services.

235.    Accident Pain Wellness, K. Jung, and S. Jung engaged in unfair, deceptive, and unconscionable acts or trade practices in their trade or commerce in the pursuit and execution of their scheme to illegally obtain PIP benefits from GEICO.

236.    The bills and supporting documents submitted or caused to be submitted by Accident Pain Wellness, K. Jung, and S. Jung to GEICO were fraudulent in that they misrepresented that: (i) the underlying Unlawful Services were medically necessary, when in fact they were not; (ii) in many cases, the underlying Unlawful Services were provided in the first instance, when in fact they were not; (iii) the individuals who performed the underlying Unlawful Services were licensed to perform those services, when in fact they were not; and (iv) the billing codes used to bill for the Unlawful Services accurately and truthfully represented the nature and extent of those services, when in fact they did not.

237.    Such acts and practices offend public policy and are immoral, unethical, oppressive, and unscrupulous and in violation of O.R.S. §§ 646.6081(1)(g). The conduct of Accident Pain Wellness, K. Jung, and S. Jung has been materially injurious to GEICO and its Insureds.

**Williams Kastner**
1515 SW Fifth Avenue, Suite 600
Portland, OR 97201-5449
(503) 228-7967

7627471.1

238.    GEICO relied on the facially-valid documents submitted or caused to be submitted to GEICO by Accident Pain Wellness, K. Jung, and S. Jung in support of the fraudulent charges at issue when paying claims for the Unlawful Services.

239.    The conduct of Accident Pain Wellness, K. Jung, and S. Jung was the actual and proximate cause of the damages sustained by GEICO.

240.    The Defendants' unfair and deceptive acts have caused GEICO to sustain damages of at least $300,000.00.

241.    By reason of Accident Pain Wellness, K. Jung, and S. Jung's conduct, GEICO is also entitled to recover reasonable attorneys' fees and costs pursuant to O.R.S. § 646.638(3).

### SEVENTH CAUSE OF ACTION
### Common Law Fraud
### Against Accident Pain Wellness, K. Jung, and S. Jung

242.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 194 above.

243.    Accident Pain Wellness, K. Jung, and S. Jung intentionally and knowingly made false and fraudulent statements of material fact to GEICO in the course of their submission of thousands of fraudulent charges seeking payment for the Unlawful Services.

244.    The false and fraudulent statements of material fact and acts of fraudulent concealment in the claims identified in Exhibit "1" include: (i) the representation that the Unlawful Services were medically necessary, when in fact they were not medically necessary, and were performed – to the extent they were performed at all – as part of a pre-determined fraudulent treatment and billing protocol designed solely to financially, not to benefit the Insureds who supposedly were subjected to them; (ii) the representation that many of the Unlawful

Williams Kastner
1515 SW Fifth Avenue, Suite 600
Portland, OR 97201-5449
(503) 228-7967

7627471.1

Services were actually performed, when in many cases they were not actually performed; (iii) the representation that the individuals who performed many of the underlying Unlawful Services were licensed to perform those services, when in fact they were not; and (iv) the representation that the billing codes used to bill for the Unlawful Services accurately and truthfully represented the nature and extent of those services, when in fact they did not.

245.    Accident Pain Wellness, K. Jung, and S. Jung intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to induce GEICO to pay charges submitted through Accident Pain Wellness.

246.    GEICO justifiably relied on these false and fraudulent representations and acts of fraudulent concealment, and as a proximate result has been injured in its business and property by reason of the above-described conduct in that it has paid at least $300,000.00 pursuant to the fraudulent bills submitted by Accident Pain Wellness, K. Jung, and S. Jung through Accident Pain Wellness.

247.    Accident Pain Wellness, K. Jung, and S. Jung's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonestly that entitled GEICO to recover punitive damages.

248.    Accordingly, by virtue of the foregoing, GEICO is entitled to compensatory and punitive damages, together with interests and costs, and any other relief the Court deems just and proper.

/ / /

/ / /

/ / /

**Williams Kastner**
1515 SW Fifth Avenue, Suite 600
Portland, OR 97201-5449
(503) 228-7967

7627471.1

## EIGHTH CAUSE OF ACTION
### Against All Defendants
### (Unjust Enrichment)

249.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 194 above.

250.    As set forth above, the Defendants have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of GEICO.

251.    When GEICO paid the bills and charges submitted or caused to be submitted by the Defendants through Accident Pain Wellness, it reasonably believed that it was legally obligated to make such payments based on Accident Pain Wellness's improper, unlawful, and/or unjust acts.

252.    The Defendants have been enriched at GEICO's expense by GEICO's payments which constituted a benefit that the Defendants voluntarily accepted notwithstanding their improper, unlawful, and unjust billing scheme.

253.    The Defendants' retention of GEICO's payments violates the fundamental principles of justice, equity, and good conscience.

254.    By reason of the above, the Defendants have been unjustly enriched in an amount to be determined at trial, but in no event less than $300,000.00.

## JURY DEMAND

255.    Pursuant to Federal Rule of Civil Procedure 36(b), Plaintiffs demand a trial by jury.

**WHEREFORE**, Plaintiffs Government Employees Insurance Company, GEICO Indemnity Company, GEICO General Insurance Company, and GEICO Casualty Company

Page 60 -   COMPLAINT

**Williams Kastner**
1515 SW Fifth Avenue, Suite 600
Portland, OR 97201-5449
(503) 228-7967

demand that a Judgment be entered in their favor.

A. On the First Cause of Action against Accident Pain Wellness for a declaration pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, that Accident Pain Wellness has no right to receive payment for any pending bills submitted to GEICO;

B. On the Second Cause of Action against K. Jung and S. Jung, compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $300,000.00 together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964 plus interest;

C. On the Third Cause of Action against K. Jung, S. Jung, and Jane Doe Defendants "1" and "2", compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $300,000.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c), plus interest;

D. On the Fourth Cause of Action against K. Jung and S. Jung, compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $300,000.00, together with reasonable attorneys' fees pursuant to O.R.S. § 166.725(14), plus interest;

E. On the Fifth Cause of Action against K. Jung, S. Jung, and Jane Doe Defendants "1" and "2", compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $300,000.00, together with reasonable attorneys' fees pursuant to O.R.S. § 166.725(14), plus interest;

**Williams Kastner**
1515 SW Fifth Avenue, Suite 600
Portland, OR 97201-5449
(503) 228-7967

7627471.1

F.  On the Sixth Cause of Action against Accident Pain Wellness, K. Jung, and S. Jung, compensatory damages in an amount to be determined at trial but in excess of $300,000.00,together with costs and reasonable attorneys' fees pursuant to O.R.S. § 646.638(3), plus interest;

G.  On the Seventh Cause of Action against Accident Pain Wellness, K. Jung, and S, Jung, compensatory damages in an amount to be determined at trial but in excess of $300,000.00, together with punitive damages, costs, interest, and such other and further relief as the Court deems just and proper;

H. On the Eighth Cause of Action against the Defendants, more than $300,000.00 in compensatory damages, plus costs and interest and such other and further relief as this Court deems just and proper.

DATED this 27th day of July, 2022.

WILLIAMS KASTNER

/s/ Heidi L. Mandt
Heidi L. Mandt, OSB #953459
hmandt@williamskastner.com
1515 SW 5th Ave., Suite 600
Portland, OR 97201
Ph.:  (503) 228-7967
*Counsel for Plaintiffs Government Employees Insurance Co., GEICO Indemnity Co., GEICO General Insurance Company, GEICO Casualty Co., and GEICO Secure Insurance Company*

Page 62 -  COMPLAINT

7627471.1

RIVKIN RADLER LLP

*/s/ Barry I. Levy*

Barry I. Levy, Esq. (*pro hac vice* pending)
Steven Henesy, Esq. (*pro hac vice* pending)
Carissa Danesi, Esq. (*pro hac vice* pending)
926 RXR Plaza
Uniondale, New York 11550
Phone:  (516) 357-3000
Facsimile:  (516) 357-3333
Barry.Levy@rivkin.com
Steven.Henesy@rivkin.com

*Counsel for Plaintiffs Government Employees Insurance Co., GEICO Indemnity Co., GEICO General Insurance Company, GEICO Casualty Co., and GEICO Secure Insurance Company*

**Williams Kastner**
1515 SW Fifth Avenue, Suite 600
Portland, OR 97201-5449
(503) 228-7967

7627471.1